# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

JOHN SIMEON                                                                                 PLAINTIFF

v.                                             CIVIL ACTION NO. 3:13CV-P534-S

KY DEP'T OF CORR. *et al*.                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff John Simeon, a prisoner proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 (DN 1). He subsequently filed supplemental information (DN 13), and, in response to this Court's Order directing him to remedy the deficiencies in his complaint, he filed additional portions of the complaint (DN 19). The Court construes these filings (DNs 13 & 19) as motions to amend the complaint. Construed as such, the motions are **GRANTED**.

This matter is before the Court for initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).[1] For the reasons set forth below, the action will be dismissed.

## I. STATEMENT OF THE CASE

Plaintiff brings this action against six Defendants: (1) Kentucky Department of Corrections [KDOC]; (2) Dr. Frederick[2] Kemen, a physician at Kentucky State Reformatory [KSR]; (3) Correctcare Inmates [Correctcare]; (4) Denise Black, a nurse at Little Sandy Correctional Complex [LSCC]; (5) Carol Cornett, a nurse at LSCC; and (6) Shelli Conyers

---

[1] Although documents have been filed in this case in support of and in opposition to a motion for preliminary injunctive relief, they will not be considered by the Court in its initial review. Such review is properly made of the complaint as amended (DNs 1, 13 & 19). 28 U.S.C. § 1915A(a).

[2] KDOC records attached to the complaint indicate that the doctor's name is actually "Frederick."

Votaw, a nurse at Northpoint Training Center [NTC]. Plaintiff indicates that he is suing Defendants KDOC, Kemen, and Correctcare in both an individual and official capacity and that he is suing Defendants Black, Cornett, and Votaw in their official capacities only. As relief, Plaintiff seeks monetary and punitive damages, as well as an injunction allowing him "to stay in [the] area so [his] Cancer can be treated at James Graham Brown Cancer Center without delay, and follow-up monitoring continued."

In his complaint Plaintiff makes the following claims:

Under the First Amendment I ask for the right to "Petition the government for a redress of grievances," and under the Fifth and Fourteenth Amendments, I ask for the due process of law." Under the Eighth Amendment I am entitled to serious medical needs. For over 10 months all that was done to the Cancer in me was test it for condition and NO TREATMENT at all was ever done to the Cancer, for over 10 months. And that wasn't until I wrote to the Governor.[3]

Regarding the Eighth Amendment claims, more specifically, Plaintiff contends as follows: (1) that Dr. Kemen "failed to in a timely manor take care of the Prostate Cancer which was known to be growing for over 10 months before an operation was performed"; (2) Defendants Black and Cornett should have kept a closer watch on his PSA[4] and performed a DRE[5] during the time he was incarcerated at LSCC; and (3) while he was at NTC Defendant Votaw also failed to keep a proper watch on his PSA and failed to detect his cancer.

---

[3]Although Plaintiff makes statements about the First, Fifth, and Fourteenth Amendments, it does not appear he contends these amendments have been violated. It seems that Plaintiff is invoking these amendments in support of his right to be heard by this Court. Further, he presents no facts supporting violations of these amendments. Thus, the Court will analyze this case under the Eighth Amendment only.

[4]PSA refers to the prostate specific antigen that is used to help detect prostate cancer.

[5]Digital Rectal Examination

2

According to Plaintiff's complaint, in 2006 his PSA was 2.7. On February 2, 2009, Plaintiff states his PSA had increased to 4.1, which indicated that it needed to be followed closely. Plaintiff states that "[f]rom 4-10 Cancer is forming." In 2009, Plaintiff states he was incarcerated at LSCC where Defendants Black and Cornett were in charge of the medical department. He contends that they should have checked on his PSA, but did not. Plaintiff states that while there he "should have been kept under a close watch and given a DRE however Denise Black RN and Carol Cornett NP never addressed the Cancer that was forming in [him]." On October 12, 2011, according to Plaintiff, he was transferred to NTC where Defendant Votaw "failed to detect the Cancer as well." Plaintiff states that while at NTC, Defendant Votaw performed a DRE and "located nothing."

According to Plaintiff, some seven months later, on May 8, 2012, he was now incarcerated at Kentucky State Penitentiary [KSP], and his PSA was checked again. Plaintiff states that at that time his PSA was 22.9, indicating he had "FULL BLOWN AGGREESSIVE CANCER." According to Plaintiff, the 22.9 reading "prompted further tests to be performed," and the following week another blood test was performed which confirmed Plaintiff's elevated PSA. Plaintiff states that he was then "sent to see a Urologist in Madisonville, KY and a biopsy was done on August 2, 2012." Plaintiff states that he returned to this urologist, Dr. D'Amico, on August 16, 2012, at which time he "was given the results of the biopsy, which was full blown aggressive Cancer." According to Plaintiff he "consented to getting the Cancer removed at that time." He states that Dr. D'Amico informed him that she did not perform surgery, but treated a patient after their surgery was complete. Dr. D'Amico's record from this date reflects a diagnosis of prostate cancer and lists treatment recommendations as "prostatectomy; radiation;

cryotherapy all all options - - - - pt would like prostatectomy." Dr. D'Amico further recommended a CT scan and a bone density test. According to Plaintiff he had a CT scan at Western Baptist Hospital on August 27, 2012, which showed that the cancer had not spread.

He states that on September 25, 2012, he "was sent back to see Dr. D'Amico, in Madisonville, to go over the CT Scan results." According to Plaintiff, Dr. D'Amico was alarmed that nothing had been done yet about Plaintiff's cancer and that no surgery had been performed. According to Dr. D'Amico's September 25, 2012, note, she discussed Plaintiff's diagnosis and various treatment options with him. She commented in her note that Plaintiff was "leaning towards REMOVAL" but wanted "to think about the prostate cancer diagnosis and [would] get back to [her] when he has made his decision." Her note further reflects that "Pt expresses understanding and will discuss the next step with Dr. Hiland the the board at the facility."

Plaintiff states he wrote a letter to Dr. Hiland on October 9, 2012, because nothing had been done since August. According to Plaintiff he was transferred to KSR on October 15, 2012. Plaintiff states that he was first seen by Defendant Kemen on October 23, 2012, and by a urologist, Dr. Christopher Smith, on November 5, 2012. Plaintiff states that Dr. Smith told him about "nerve sparing operations" and informed him the biopsy results showed only half of his prostate "was Cancer." Plaintiff states he "asked for the nerve sparing operation and Dr. Smith said he does not do that type of operation and referred me to Dr. Malkani Ankem at the U of L[6] Hospital." Additionally, according to Plaintiff, Dr. Smith ordered a nuclear bone density test. Plaintiff states this was the fourth time this test had been ordered, the first time being when it was ordered by Dr. D'Amico in August 2012.

---

[6]University of Louisville

According to Plaintiff, he saw Defendant Kemen again on November 6, 2012, and at that time Defendant Kemen informed Plaintiff that he was going to send him to Dr. Ankem for a nerve sparing operation. On December 10, 2012, Plaintiff states he was taken to Baptist Hospital Northeast and was given a nuclear bone density test which showed "that the Cancer had not at this point spread to the bones." Plaintiff indicates that he was seen by Dr. Ankem at U of L Hospital on December 20, 2012, at which time Dr. Ankem informed him he could do "the nerve sparing operation in about 3 weeks." Defendant Kemen, Plaintiff states, failed to send Plaintiff's nuclear bone density test results with him for this appointment, so Plaintiff informed Dr. Ankem about the test. Plaintiff states that on January 5, 2013, he mailed Dr. Ankem a copy of the nuclear bone density test results. According to Plaintiff, at this point, he had not seen or heard from Defendant Kemen since November 6, 2012, despite Plaintiff sending him questions "asking him why he has not given me any Radiation or Chem to curb the growth of the Cancer until an operation could be done." Plaintiff includes as an exhibit to his complaint a grievance in which he questioned Defendant Kemen's alleged refusal to provide him with chemotherapy or radiation treatment prior to surgery to curb the grown of the prostate cancer until surgery could be performed. In response thereto, Defendant Kemen stated:

> Unfortunately, there is no treatment to "stop the spread of prostate cancer." Radiation is not done prophylactically to an area that will subsequently be the site of a surgical operation. Prostate cancer is not sensitive to chemotherapy. You have received timely evaluation for prostate cancer. Definitive surgery has been delayed by your refusal to accept the operation that was initially recommended.

According to Plaintiff, he was seen by Elaine Smith in "medical at KSR" on December 31, 2012, at which time "all she did was check vital signs." On February 5, 2013, Plaintiff states he was again seen by Elaine Smith. During this appointment, according to Plaintiff, she stated she knew

5

nothing about Dr. Ankem in response to Plaintiff's inquiry about Dr. Ankem. According to Plaintiff, Plaintiff sent a report to the Governor of Kentucky on or about February 20th.

Plaintiff states that he was operated on and his prostate was removed on March 11, 2013. He further states that the operation occurred "over 10 months since it was known to be Cancer," and the pathology report at that time showed the cancer was outside of his prostate necessitating radiation and chemotherapy. According to Plaintiff, "[e]ven with this treatment the likelihood that a secondary Cancer will form in coming years is quite high."

In the supplemental information he filed with the Court, Plaintiff states that after he filed his complaint and motion for an injunction, "appointments started to be made." He states that his visits for radiation treatment went "without a hitch" until this Court entered an Order denying his request for preliminary injunctive relief. According to Plaintiff, after the Court denied his request for preliminary injunctive relief, "[t]hey are doing everything they can to get me from getting treatment now that the Injunction is not hanging over their heads anymore." Plaintiff states that on one occasion a female guard rather than a male guard was present while a doctor performed a rectal exam. Plaintiff further states that subsequent to the denial he was prohibited from going to the restroom prior to treatment, but was told that he must use the restroom before leaving KSR for his treatment. Additionally, Plaintiff states that this restroom restriction has caused him to eat and drink less resulting in him losing weight. Plaintiff states that this has all caused him emotional stress and resulted in him seeking the help of a psychologist. According to Plaintiff, his last radiation treatment was scheduled to occur on September 20, 2013.

6

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all

potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. LEGAL ANALYSIS

*A. Claims Against Correctcare Inmates*

To state a claim under § 1983, a plaintiff must allege that 1) a right secured by the Constitution or a federal statute has been violated, and 2) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). A complaint filed under § 1983 must show a causal connection between each of the named Defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by each Defendant was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 828-29 (9th Cir. 1986). "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To establish causation, Plaintiff must adduce "an affirmative link, [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id.* When the theory of causation is a matter of pure speculation and is nothing more than an hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983 claim. *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) ("[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury.").

8

In the present case, Plaintiff sets forth facts about what happened. However, he fails to connect any of the facts or allegations to Defendant Correctcare Inmates. There are no facts regarding any specific action or inaction on the part of Defendant Correctcare Inmates. Thus, there is nothing in the complaint which shows a causal connection between this Defendant and the alleged constitutional deprivation.

For these reasons, Defendant Correctcare Inmates and the claims against it will be dismissed from this action.

## B. Claims Against KDOC

### 1. Individual-Capacity Claim

Individual-capacity suits, also known as personal-capacity suits, seek to impose individual liability on a "government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The individual-capacity designation is not applicable to a Defendant which is not an individual since no personal liability is involved.

Accordingly, the individual-capacity claims against the KDOC will be dismissed from this action.

### 2. Official-Capacity Claim

Under the Eleventh Amendment to the U.S. Constitution,[7] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf &*

---

[7]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

9

*Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

Accordingly, the official-capacity claims against the KDOC will also be dismissed from this action.

### C. Claims Against Defendants Black, Cornett, and Votaw

Plaintiff sues Defendants Black, Cornett, and Votaw in their official capacities only. The Eleventh Amendment bars damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity).

Plaintiff also seeks prospective injunctive relief. Such relief is not barred by Eleventh Amendment immunity. *See McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000) (finding that "[t]he district court correctly determined that the Eleventh Amendment permits prospective injunctive relief but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983"). However, since Plaintiff is no longer incarcerated at either LSCC or

NTC where these Defendants are allegedly employed, his request for injunctive relief against them is moot. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001) (noting that since plaintiff was no longer incarcerated where the alleged wrongful events occurred his requested injunctive and declaratory relief was moot); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (finding plaintiff's complaint could not "be read to allege an ongoing constitutional violation" by defendants since plaintiff was no longer incarcerated at the institution "where the events that form the basis for his allegations . . . took place"); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding plaintiff's claims for declaratory and injunctive relief were moot since plaintiff was no longer confined to the institution where the alleged wrongful events occurred); *Jeffries v. Paulius*, No. 4:13CV-P59-M, 2013 WL 5740152, at *5 (W.D. Ky. Oct. 22, 2013) ("[T]o the extent Plaintiff seeks proper medical treatment as injunctive relief in this action, his request became moot when he was transferred . . . . Defendants no longer have any authority over what medical care Plaintiff receives . . . .").

Accordingly, the claims against Defendants Black, Cornett, and Votaw will be dismissed from this action.

### D. Claims Against Defendant Kemen

#### 1. Official-Capacity Claim

As previously discussed, the Eleventh Amendment bars damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency

11

and its employees in their official capacities for damages barred by Eleventh Amendment immunity).

Thus, the official-capacity claim for money damages against Defendant Kemen will be dismissed from this action.

However, Plaintiff also seeks prospective injunctive relief in this action. Such relief is not barred by Eleventh Amendment immunity. *See McKay v. Thompson*, 226 F.3d at 757 (finding that "[t]he district court correctly determined that the Eleventh Amendment permits prospective injunctive relief but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983"). The injunctive relief Plaintiff seeks is for the Court to allow him to "stay in the area so [his] Cancer can be treated at James Graham Brown Cancer Center without delay, and follow-up monitoring continued." The law is clear that inmates have no constitutional right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution. *Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections cabinet. Ky. Rev. Stat. § 197.065. If construed broadly, in seeking injunctive relief, Plaintiff seeks surgery and post-surgical treatment for his prostate cancer. According to Plaintiff, however, he has received the necessary surgery and completed all of the

recommended post-surgical radiation treatments.[8]  Thus, reading the request for injunctive relief broadly, Plaintiff's request is moot.

For these reasons, the official-capacity claim against Defendant Kemen for prospective injunctive relief will also be dismissed from this action.

### *2. Individual-Capacity Claims*

Plaintiff not only brings this action against Defendant Kemen in his official capacity, but in his individual capacity as well.  Plaintiff's allegation against Defendant Kemen is that he "failed to in a timely manor take care of the Prostate Cancer which was known to be growing for over 10 months before an operation was performed."  It further appears, if reading the complaint broadly, that Plaintiff contends Defendant Kemen should have ordered chemotherapy or radiation therapy prior to surgery in order to stop the spread of his cancer.

The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from deliberate indifference to an inmate's serious medical needs since such indifference constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106; *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).

---

[8]The Court takes judicial notice of the completion of Plaintiff's radiation treatments.  The Court may take judicial notice of "a fact that is not subject to reasonable dispute" either because such a fact "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Plaintiff himself represented to the Court that he received all 35 of the radiation treatments that were recommended (DN 16).

An Eighth Amendment claim consists of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1 (1992); *Flanory v. Bonn*, 604 F.3d at 253; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires that the medical need be sufficiently serious. *Flanory v. Bonn*, 604 F.3d at 253 ("To satisfy the objective component, the injury must be sufficiently serious.") (citations omitted). This component is contextually driven and is responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. at 8 (citation omitted). The subjective component requires that the official's conduct be deliberately indifferent to Plaintiff's needs. *Farmer v. Brennan,* 511 U.S. at 838-847; *Wilson v. Seiter*, 501 U.S. 294 (1991); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). Deliberate indifference is a "state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 835. "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the [doctor or] official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d at 703 (citing *Farmer v. Brennan*, 511 U.S. at 837). "The requirement that the [doctor or] official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S. at 835).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 105. Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("Accidents,

mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner. Neither negligent medical care nor delay in medical care constitutes a violation of the Eighth Amendment unless there has been deliberate indifference, which results in substantial harm.") (citations omitted); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("Succinctly stated, negligent medical care does not constitute a valid section 1983 claim. Further, delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."). Furthermore, a difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle v. Gamble*, 429 U.S. at 107; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to . . . medical needs."); *Shorner v. Comacho*, No 99-6717, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000) ("A difference of opinion regarding medical treatment . . . is insufficient to state a claim under the Eighth Amendment.").

As to the objective component of his Eighth Amendment claims, for purposes of initial review, Plaintiff has shown that his medical need, treatment for prostate cancer, was sufficiently serious. However, where his claims fail is with the subjective component of the Eighth Amendment claims.

First, in reading the complaint broadly, Plaintiff appears to contend that Defendant Kemen should have ordered chemotherapy or radiation treatment prior to his surgery to stop the spread of his cancer. Defendant Kemen disagreed with this course of treatment. According to Defendant Kemen, there is no treatment to stop the spread of prostate cancer. Specifically, it was Defendant Kemen's opinion that "[r]adiation is not done prophylactically to an area that will subsequently be the site of a surgical operation" and that "[p]rostate cancer is not sensitive to

15

chemotherapy." A difference of opinion between the inmate and a prison medical official concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle v. Gamble*, 429 U.S. at 107; *Sanchez v. Vild*, 891 F.2d at 242. For this reason, Plaintiff's contention that Defendant Kemen violated the Eighth Amendment in not providing Plaintiff with chemotherapy or radiation treatment prior to surgical removal of his prostate fails.

Second, Plaintiff claims that Defendant Kemen "failed to in a timely manor take care of the Prostate Cancer which was known to be growing for over 10 months before an operation was performed." The facts alleged by Plaintiff show neither deliberate indifference on the part of Defendant Kemen nor delay in treatment for which Defendant Kemen is responsible. According to the complaint, Plaintiff was transferred to KSR on October 15, 2012. Soon thereafter, on October 23, 2012, Plaintiff states that he was seen by Dr. Kemen who arranged for Plaintiff to be seen by Dr. Christopher Smith. On November 5, 2012, Plaintiff represents that he was seen by Dr. Smith, a urologist, who explained surgical options to Plaintiff. According to Plaintiff, he informed Dr. Smith that he wanted a nerve sparing operation. Since Dr. Smith did not perform this type of surgery, he made a referral for Plaintiff. Plaintiff states that he again saw Defendant Kemen on November 6, 2012, at which time Defendant Kemen informed Plaintiff he was going to send him to Dr. Ankem for the requested nerve sparing operation. According to Plaintiff, on December 10, 2012, he had a nuclear bone density test performed at Baptist Hospital Northeast. On December 20, 2012, Plaintiff states that he was seen by Dr. Ankem who informed Plaintiff that he could do the nerve sparing operation in about 3 weeks. Both at the end of December and again at the beginning of February Plaintiff states that he was seen by medical at KSR. According to Plaintiff, he had his prostate removed on March 11, 2013.

There are no allegations contained in the complaint showing how Defendant Kemen was responsible for any alleged delay in Plaintiff's surgery. Plaintiff was not under Defendant Kemen's care until his transfer to KSR in October 2012. The facts set forth by Plaintiff show that he regularly proceeded through evaluations and consultations from the time of his transfer to KSR until his appointment with Dr. Ankem on December 20, 2012. Although Plaintiff's surgery was not performed within 3 weeks of his appointment with Dr. Ankem, Plaintiff fails to include any facts in his complaint connecting the failure of the surgery being performed within that three-week time period to Defendant Kemen. Plaintiff has set forth no facts showing that Defendant Kemen deliberately disregarded a risk of harm to Plaintiff.

For these reasons, the individual-capacity claims against Defendant Kemen will be dismissed from this action.

## IV. CONCLUSION

Having determined that all of Plaintiff's claims must be dismissed, the Court will enter a separate order dismissing this case pursuant to 28 U.S.C. § 1915A(b).

Date: January 22, 2014

                                        **Charles R. Simpson III, Senior Judge**
                                        **United States District Court**

cc:     Plaintiff, *pro se*
       Defendants
       General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4411.003